UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**LEIGH GLASS,**

 *Plaintiff,*

v.

**ANDREW M. SAUL,**[1]
Commissioner of Social Security,
 *Defendant.*

Case No. 19-cv-1804-RCL

## MEMORANDUM OPINION

Plaintiff Leigh Glass brings this action *pro se* challenging a Social Security Administration determination that she is ineligible for supplemental security income because she is not disabled under the Social Security Act, 42 U.S.C. § 401 *et seq.* Before the Court are plaintiff's Motion to Stay, ECF No. 88, and defendant Andrew M. Saul's Motion for Judgment of Affirmance,[2] ECF No. 86. After considering the motions and the entire record, the Court will **DENY** plaintiff's motion and **GRANT** defendant's motion.

### I. BACKGROUND

Through an adjudicatory process, the Social Security Administration ("SSA") provides benefits to individuals who cannot work because of a physical or mental disability. On December 11, 2009, plaintiff filed an application with the SSA for supplemental security income for an alleged disability that began on October 1, 2008. Soc. Sec. Admin. Op. 31, ECF No. 80. Her claim was initially granted in February 2010; however, following a report of fraud by a private citizen,

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for Nancy A. Berryhill, his predecessor. *See* Fed. R. Civ. P. 25(d).

[2] The motion is entitled Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal. The plaintiff never filed a motion for judgment of reversal.

the SSA's Cooperative Disability Investigations Unit ("CDI") began an investigation and recommended plaintiff's case be reopened in 2011. *Id.* SSA reopened her case and subsequently denied her claim in February 2012, and again upon reconsideration in April 2014. *Id.* Plaintiff then filed a request for a hearing, which was held on August 21, 2015, in front of the Honorable John Cusker, an Administrative Law Judge ("ALJ"). Op. 32. Plaintiff waived her right to appear at the hearing and instead appointed Ms. Kristine Allison as her non-attorney representative. *Id.*

At the hearing, Ms. Allison appeared and testified in person. *Id.* Ms. Allison's testimony was largely limited to describing her infrequent contact with plaintiff and how plaintiff has "been very difficult, and has continued to . . . do what she wants to do throughout this process." Tr. 1337, ECF No. 80-13. Ms. Cheryl R. Chandler, an impartial vocational expert, also testified at the hearing. Tr. 1339. Ms. Chandler and the ALJ confirmed that plaintiff was forty-three years old and had at least a high school education, and that she had no "substantial gainful activity within the last 15 years." Tr. 1342–43.

The ALJ then gave Ms. Chandler a hypothetical individual and asked her whether there would be any jobs that the individual could perform in the national economy. Tr. 1343. The hypothetical individual had certain functional limitations; specifically:

> understanding and memory sufficient to understand and remember simple instructions. She has sustained concentration and persistence, with sufficient ability to carry out short instructions, perform activities without additional support once mastered, and ability to maintain adequate attention for simple one and two step tasks. In terms of social interaction and environment, below interpersonal contact is required. In terms of adaptation, this person has sufficient ability to be aware of normal hazards, and to utilize public transportation. Given limited coping skills, she requires low stress and a consistent environment.

*Id.* Ms. Chandler testified that the individual could work in the national economy as a machine feeder, lumber straightener, box bender, or in other similar jobs. Tr. 1344–46. Plaintiff's representative declined to ask Ms. Chandler any questions. Tr. 1348.

On September 15, 2015, the ALJ issued his decision denying plaintiff's application for supplemental security income. Op. 34. The ALJ found that plaintiff had not engaged in substantial gainful activity since December 11, 2009, that she had the severe impairment of a mood disorder, and that that severe impairment did not equal or exceed the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). Op. 35–36. The ALJ then considered plaintiff's residual functional capacity ("RFC") and found that plaintiff was not disabled because she could perform a full range of work at all exertional levels, subject to the limitations of completing only simple repetitive tasks without public contact. Op. 37. After unsuccessfully seeking review by the agency's Appeals Council, plaintiff timely filed this suit under 42 U.S.C. § 405(g).[3]

## II. LEGAL STANDARD

The Court's review of the ALJ's decision is limited to deciding whether the ALJ correctly applied the relevant legal standards and whether substantial evidence supports the ALJ's findings. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). The substantial evidence standard "requires more than a scintilla, but . . . less than a preponderance of the evidence," *id.* (internal quotation marks omitted), and can be satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

---

[3] Plaintiff initially filed her complaint in the United States District Court for the Northern District of Illinois; after SSA filed a motion to transfer, the United States District Court for the Northern District of Illinois granted the motion and transferred the case to this Court. *See* ECF Nos. 1, 71, 72, 74.

3

To qualify for supplemental security income under the Social Security Act, plaintiff must establish that she is "disabled." 42 U.S.C. § 1382(a)(1). The SSA has established a five-step sequential evaluation process for assessing whether an individual is disabled. *See* 20 C.F.R. § 416.920(a). The first three steps involve, respectively, the ALJ considering whether the individual is currently engaged in "substantial gainful activity," whether the medical impairment is "severe," and whether the severe medical impairment meets one of the "listings" in the relevant subpart Appendix. § 416.920(a)(4)(i)–(iii). If the severe medical impairment is not a listed impairment under the third step, the ALJ then assesses the individual's RFC before moving on to the fourth step. § 416.920(a)(4), (e). An individual's RFC is the most she can still do despite her limitations and is assessed based on all the relevant evidence in the record. § 416.945(a)(1). If the ALJ finds that the individual can adjust to other work based on her age, education, and the RFC assessment, she is not disabled under the Social Security Act. § 416.920(h).

## III. DISCUSSION

Plaintiff challenges the ALJ's decision in her Amended Complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3).[4] However, Plaintiff also filed a motion to stay on March 19, 2020, that

---

[4] Plaintiff raises numerous other claims in her complaint, including for fraud, discrimination, and retaliation; she also asks for damages. *See generally* Am. Compl. The Court lacks jurisdiction to address these claims, however. Sections 405(g) and (h) both confer jurisdiction on the Court to review final decisions of the SSA and bar it from considering any actions that arise under the Social Security Act except for such final reviews and for constitutional claims. *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988); *Ganem v. Heckler*, 746 F.2d 844, 848 (D.C. Cir. 1984).

The Commissioner, acting through an ALJ, denied plaintiff's request for supplemental security income following a hearing. Op. 34. Thus, plaintiff's request for review of the ALJ's decision is the only claim the Court will address. *See* § 405(h); *Califano v. Sanders*, 430 U.S. 99, 108 (1977); *Ganem*, 746 F.2d at 848.

Further, to the extent plaintiff raises a due process claim, the entirety of it is that "SSA is violating [plaintiff's] rights under the [Fifth] Amendment," because "everyone, (including [p]laintiff,) has a clear legal right to submit an application for Social Security Disability." Am. Compl. 5. This Court will not address plaintiff's undeveloped constitutional claim. *See Davis v. Pension Benefit Guar. Corp.*, 734 F.3d 1161, 1166–67 (D.C. Cir. 2013). Finally, plaintiff's request for damages is unavailing, since the Court is limited to entering "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." § 405(g). Damages are precluded. *See Schweiker*, 487 U.S. at 424.

is pending before the Court. The Court will first address that motion before reviewing the ALJ's decision. Ultimately, the Court does not find plaintiff's arguments convincing, and it will therefore grant defendant's motions.

### A. The Court Denies Plaintiff's Requests in Her Motion to Stay

Plaintiff makes three requests in her motion to stay: that the Court should stay the case due to plaintiff's "incapacitated state and current enrollment in a treatment program and exposure to COVID-19," grant her request for a reasonable accommodation to access Electronic Case Files ("ECF"), and grant her request to have "all previously mailed items" re-mailed to her. Mot. Stay 1–3. None of her arguments in support of her requests are persuasive.

#### a. Plaintiff's Stay Request

The Court begins with plaintiff's stay request. Because this Court "must take pains to protect the rights of *pro se* parties against the consequences of technical errors," *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005), it looks to the substance and not the form of *pro se* filings, *see, e.g., Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996) (affirming decision of district court to treat *pro se* letters as motions for summary judgment); *Duru v. United States Dep't of Just.*, No. 17-cv-1005 (CKK), 2017 WL 6541266, at *1 (D.D.C. Sept. 6, 2017) (treating *pro se* motion for default judgment as opposition to motion to dismiss for failure to serve); *Nabaya v. Dudeck*, No. 13-cv-1912 (RBW), 2014 WL 12539331, at *1 (D.D.C. Jan. 31, 2014) (treating *pro se* motion for writ of mandamus as motion for TRO).

Plaintiff moved for a "stay," averring that she is "incapacitated" and implying that she is unable to attend to legal proceedings and paperwork. *See* Mot. Stay 1-2. The relief she seeks, in essence, is more time due to her medical incapacity. While she does not say what she needs more time for, the only deadlines pending were her motion for reversal and her response to the government's motion. Thus, the Court will assume that she seeks more time to file those

documents and treat her motion to stay as a motion for an extension of time under Federal Rule of Civil Procedure 6(b)(1)(B).[5]

Unfortunately for plaintiff, an extension of time is not warranted because she cannot show excusable neglect. Whether a delay constitutes excusable neglect requires an equable balancing of "the danger of prejudice to the [other party], the length of delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). While medical emergencies often suffice to show excusable neglect, *see, e.g.*, *Halvonik v. Doll*, 263 F.R.D. 13, 16–17 (D.D.C. 2009), they do so only if the emergency prevents the party from meeting a deadline.

Here, plaintiff claims that she was exposed to the SARS-CoV-2 virus and that she was "in a partially incapacitated and in a heavily medicated state" on February 27, 2020, the date she served her motion on the government. Mot. Stay 6. Be that as it may, plaintiff's medical emergency came one month *after* the Court's January 26, 2020 deadline for all dispositive motions. *See* Nov. 27, 2020 Order 2, ECF No. 84. Plaintiff is not claiming she was exposed to the SARS-CoV-2 virus in January 2020 or earlier, and therefore she has not actually explained why she missed the January 26, 2020 deadline. Thus, the Court does not see any excusable neglect warranting an extension of time for plaintiff.[6]

---

[5] Plaintiff filed her motion to stay after the deadlines to file her motion for reversal and response had expired, so she should have moved for an extension of time under Rule 6(b)(1)(B). To obtain relief under that provision, plaintiff would need to ask for more time to meet the deadlines because of excusable neglect. The Court construes plaintiff's declaration of medical incapacity in her motion as her attempting to show excusable neglect.

[6] The Court also questions the good faith of plaintiff in filing this motion. Plaintiff has a history of "engaging in delay tactics" and "obstructing the process" during court proceedings. *United States v. Glass*, 357 Fed. App'x 58, 60 (9th Cir. 2009) (internal quotation marks omitted). She already filed a motion to stay with this Court, which it denied on November 27, 2019. *See* ECF No. 84. Further, in her initial motion to stay with this Court plaintiff claimed that she "has never before asked for an extension," Oct. 4, 2019 Mot. Stay 2, ECF No. 82, but the record shows she previously asked for an extension of time on November 1, 2018 and May 10, 2019, *see* ECF Nos. 45, 66. In other words, plaintiff

6

### b. Plaintiff's Remaining Requests in Her Motion to Stay

Plaintiff's other two requests in her motion to stay are similarly unsuccessful. Plaintiff requests access to the ECF filing system because, due to a visual imparity, she can only read court documents online with special computer software. Mot. Stay 2. Yet, this Court already granted plaintiff access to the ECF system, *see* ECF No. 84, and instructions for obtaining ECF credentials were emailed to plaintiff on December 5, 2019, and April 1, 2020, at the email address she provided to the Court. As for her third request, plaintiff asks that if she is not granted access to the ECF system, all court records in her case from July 2019 should be re-mailed to her. Mot. Stay 3. This request is moot, since plaintiff has been given access to the ECF filing system. However, the Court notes that the defendant already mailed copies of the 1,351-page record to plaintiff in August and December 2019. *See* ECF Nos. 79, 85. Thus, the Court will not grant any of plaintiff's requests in her motion to stay and will proceed to the merits of the case.

## B. The ALJ Properly Evaluated Plaintiff's Case

Plaintiff appeals "the [SSA's] most recent bogus cessation that stopped her disability payments" because the ALJ's decision was "not supported by substantial evidence in the record, and . . . was based on numerous egregious legal errors." Am. Compl. 2, 4. Despite her lack of specificity, the Court construes *pro se* plaintiff's argument liberally. *See Calderon v. Berryhill*, 322 F. Supp. 3d 137, 137 (D.D.C. 2018) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, plaintiff does not prevail because the ALJ properly evaluated her supplemental security income application.

Given that the ALJ found for plaintiff at steps one and two of the inquiry, the Court will consider the ALJ's decisions at step three and plaintiff's RFC.

---

was either factually inaccurate or misled the Court. This factor therefore weighs against plaintiff. The other excusable neglect factors are at best neutral, and certainly do not weigh in favor of finding for plaintiff.

7

Regarding step three, the Court finds no error in the ALJ's analysis. At step three of the process, the ALJ determines whether any severe impairment identified at step two "meets or equals one of [the] listings" in Appendix 1. § 416.920(a)(4)(iii). The listings in Appendix 1 "define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing any gainful activity, not just substantial gainful activity," and "the medical criteria defining the listed impairments" are therefore set "at a higher level of severity than the statutory standard" because they "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation marks omitted). In order for a depressive, bipolar, or related severe impairment to meet an Appendix 1 listing, a claimant must satisfy all of the Paragraph A and all of either the Paragraph B or Paragraph C criteria for a particular listing. App. 1, § 12.00(A)(1)–(2).[7]

---

[7] At the time of the ALJ's analysis, the relevant listing (12.04) was referred to as an "affective disorder," and the relevant paragraphs were the following:

> [Paragraph] A. Medically documented persistence, either continuous or intermittent, of one of the following:
>   1. Depressive syndrome characterized by at least four of the following:
>      a. Anhedonia or pervasive loss of interest in almost all activities; or
>      b. Appetite disturbance with change in weight; or
>      c. Sleep disturbance; or
>      d. Psychomotor agitation or retardation; or
>      e. Decreased energy; or
>      f. Feelings of guilt or worthlessness; or
>      g. Difficulty concentrating or thinking; or
>      h. Thoughts of suicide; or
>      i. Hallucinations, delusions, or paranoid thinking; or
>   2. Manic syndrome characterized by at least three of the following:
>      a. Hyperactivity; or
>      b. Pressure of speech; or
>      c. Flight of ideas; or
>      d. Inflated self-esteem; or
>      e. Decreased need for sleep; or
>      f. Easy distractibility; or
>      g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>      h. Hallucinations, delusions or paranoid thinking; or
>   3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> [Paragraph] B. Resulting in at least two of the following:

8

The ALJ found that plaintiff's mood disorder was a severe impairment at step two, but that it did not meet the criteria of an impairment listed in Appendix 1 at step three. Op. 36–37. To meet the listed mood disorder impairment of the Paragraph B regulation then in effect, plaintiff would have to show an extreme limitation in one, or a marked limitation in two, of the following areas of mental functioning: activities of daily living; maintaining social function; maintaining concentration, persistence, or pace; and repeated episodes of decompression. App. 1, §§ 12.04B(1)–(4) (2013).[8] However, the ALJ explained that plaintiff only had a mild limitation in activities of daily living, moderate limitations in social functioning and maintaining concentration, persistence, or pace, and no episodes of decompression. Op. 37. The ALJ specifically pointed to substantial evidence in the record, in the form of the medical opinion of Dr. Tashjian, as support for his findings. *See* Ex. 33F 26, ECF No. 80-12. The ALJ also found that plaintiff did not meet

---

        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration;

OR

    [Paragraph] C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
        1. Repeated episodes of decompensation, each of extended duration; or
        2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
        3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

App. 1, §§ 12.04(A)–(C) (2013).

[8] Paragraph B of Listing 12.04 currently requires the ALJ to consider whether a claimant's mental disorder shows:

    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        1. Understand, remember, or apply information.
        2. Interact with others.
        3. Concentrate, persist, or maintain pace.
        4. Adapt or manage oneself.

App. 1, §§ 12.04B(1)–(4).

9

the Paragraph C criteria, the only other way plaintiff could have established that her mental limitation was a listed impairment, and cited as substantial evidence Dr. Tashjian's evaluation that directly said plaintiff's impairment did not meet Paragraph C. *See* Ex. 33F 27; App. 1, § 12.04C. Thus, the Court affirms the ALJ's step three conclusions.

The Court next turns to the ALJ's RFC assessment. The ALJ determined that plaintiff had the RFC "to perform a full range of work at all exertional levels but can perform only simple repetitive tasks, with no public contact." Op. 37. On the one hand, the ALJ did a thorough job analyzing the record to create plaintiff's RFC. He cited to objective medical opinions to support the various degrees of limitation he identified for plaintiff, and also explained why he gave certain medical opinions greater weight than others in his assessment. *See* Op. 38–43; *Butler*, 353 F.3d at 1000 (noting that an ALJ errs by not explaining his or her reasons for rejecting medical opinions in conflict with the ultimate RFC determination). The ALJ also explained why he found plaintiff's subjective assessment of her symptoms "not credible."[9] Op. 41.

On the other hand, the ALJ erred in crafting plaintiff's RFC because it fails to adequately incorporate plaintiff's limitations in concentration, task persistence, or pace ("CPP"). In his RFC determination, the ALJ found that plaintiff could do all exertional levels of work, but could

---

[9] Despite plaintiff's claims of disabling mental and physical impairments, the ALJ noted significant inconsistencies with her statements. In particular, the ALJ pointed out that plaintiff resided in Beverly Hills, Winnetka, and Fresno County, California at various points, but only provided the SSA with a post office box in Sacramento as her address, several hundred miles away; that she "drove a red Jaguar automobile with expired license tags"; that CDI investigations indicated that plaintiff referred to herself as "Dr. Leigh Davis" and advertised herself as a legal analyst, legal commentator, and law professor; that she appeared on the "Dr. Phil" television show as a "T.V. personality and legal analyst"; that she maintained a website for her entertainment business "Creative Endeavors" and paid her monthly rent with a check from her company; that she published a book in 2012 titled "Quotes from the 1960's: Sex, Love, and Rock & Roll"; that CDI investigations include interviews with plaintiff's Winnetka landlord, who stated plaintiff never appeared to be physical or mentally disabled and instead was "a highly functioning person" who "shared stories of her business ventures and high career aspirations" with the landlord; and that she received earnings as a consultant for Yuin University. *See* Op. 41–43. The ALJ was also troubled by plaintiff denying she had a criminal history as part of a mental health assessment in 2013, despite previously having been convicted and incarcerated for making a false declaration in court, bank fraud, and bankruptcy fraud. *See Glass*, 357 Fed. App'x at 61 (upholding sentencing).

"perform only simple repetitive tasks." Op. 37. This RFC is insufficient, however, because it does not fully address the ALJ's finding that plaintiff has a moderate limitation in CPP. *See id.*

A moderate CPP limitation affects a plaintiff's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016) (internal quotation marks omitted). As numerous courts have noted, however, the problem with finding a moderate CPP limitation by requiring "simple repetitive tasks" is that such a restriction, without more, does not actually address plaintiff's mental impairments because the difficulty of a task does not necessarily say anything about her ability to concentrate on it. "Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[An] ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. . . . More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis.") (internal citations omitted); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) ("[A]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."); *Petty*, 204 F. Supp. 3d at 206 n.3 (collecting cases). Given that plaintiff has "'moderate' difficulties in maintaining concentration," Op. 37, the ALJ erred by not providing a more complete explanation regarding plaintiff's ability to complete tasks during a full workday.

Nevertheless, the Court holds that the ALJ's error was harmless.

11

To be sure, there is no need for a remand if an ALJ's error is harmless. And in this case, the error would be harmless if "(1) 'medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace,' and the challenged hypothetical [that the RFC is based on] is limited 'to include only unskilled work'; or (2) the hypothetical 'otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]'" *Petty*, 204 F. Supp. 3d at 206 (quoting *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014)).

The error was harmless under the first factor. The ALJ fully detailed in his opinion the medical evidence indicating that plaintiff can engage in simple, routine tasks or unskilled work, despite her CPP limitations. *See* Op. 38–41. And while the ALJ did not explicitly limit to unskilled work the hypothetical individual he gave Ms. Chandler at the hearing, the ALJ did so when he framed the analysis in his opinion as whether plaintiff's "limitations erode the occupational base of *unskilled work* at all exertional levels." Op. 44. Further, the three example jobs Ms. Chandler gave the ALJ at the hearing, machine feeder, lumber straightener, and box bender, were all explicitly stated by her as being unskilled. *See* Tr. 1344, 1346. Thus, the hypothetical individual that plaintiff's RFC is based on was limited to unskilled work, making the ALJ's error harmless under the first factor.

Separately, the error was also harmless under the second factor because the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]" *Petty*, 204 F. Supp. 3d at 206 (internal quotation marks omitted). Unlike plaintiff's RFC in the ALJ's opinion, the hypothetical was not merely limited to "simple, repetitive tasks." Op. 37. Instead, the ALJ expanded on this definition by stating that the hypothetical individual "has understanding and memory sufficient to understand and remember simple instructions," and that

12

she "has sustained concentration and persistence, with sufficient ability to carry out short instructions, perform activities without additional support once mastered, and . . . maintain adequate attention for simple one and two step tasks." Tr. 1343. The ALJ also directed Ms. Chandler to consider Dr. Tashjian's medical opinion regarding plaintiff's RFC before giving example jobs plaintiff could perform, *see id.*, and Dr. Tashjian's opinion goes into even more detail regarding plaintiff's CPP limitations than the ALJ's description at the hearing, *see* Ex. 32F 14–15, ECF No. 80-12. In short, the hypothetical individual that Ms. Chandler had before her sufficiently accounted for plaintiff's CPP limitations in a way that "simple, repetitive tasks" does not. Therefore, the ALJ's error in failing to adequately include plaintiff's moderate CPP limitations in his RFC assessment was harmless and does not require a remand.

\*\*\*\*\*

In sum, the ALJ's error in failing to fully address plaintiff's mental limitations in his RFC analysis was harmless. In all other respects, substantial evidence supported the ALJ's conclusions. Thus, the Court affirms the ALJ's decision.

## IV. CONCLUSION

For the reasons set forth above, the Court will **DENY** plaintiff Leigh Glass's Motion to Stay, ECF No. 88, and **GRANT** defendant Andrew M. Saul's Motion for Judgment of Affirmance, ECF No. 86.

A separate Order accompanies this Memorandum Opinion.

Date: April 14, 2021

Royce C. Lamberth
United States District Judge